**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **ESSEX TECHNOLOGY GROUP, LLC,**[1] | ) | |
| | ) | **Case No. 3:25-bk-00452 (NBK)** |
| **Debtor.** | ) | |
| | ) | |
| | ) | |

**THE DEADLINE FOR FILING A TIMELY RESPONSE IS: March 6, 2025**
**IF A RESPONSE IS TIMELY FILED, THE HEARING WILL BE: March 18, 2025 at 9:00 A.M. in 3, 701 Broadway, Nashville, TN 37203**
**(Virtual Hearing if allowed; See website for details)**

---

**NOTICE OF APPLICATION OF DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF A&G REALTY PARTNERS, LLC AS REAL ESTATE CONSULTANT AND ADVISOR EFFECTIVE AS OF THE PETITION DATE**

Essex Technology Group, LLC has asked the court for the following relief: Application of Debtor for Entry of an Order Authorizing Retention and Employment of A&G Realty Partners, LLC as Real Estate Consultant and Advisor Effective as of the Petition Date.

**YOUR RIGHTS MAY BE AFFECTED.** If you do not want the court to grant the attached motion by entering the attached order, or if you want the court to consider your views on the motion, then on or before the response date stated above, you or your attorney must:

1. File with the court your response or objection explaining your position. Please note: the Bankruptcy Court for the Middle District of Tennessee requires electronic filing. Any response or objection you wish to file must be submitted electronically. To file electronically, you or your attorney must go to the court website and follow the instructions at: <https://ecf.tnmb.uscourts.gov>.

If you need assistance with Electronic Filing you may call the Bankruptcy Court at (615) 7365584. You may also visit the Bankruptcy Court in person at: 701 Broadway, 1st Floor, Nashville, TN (Monday - Friday, 8:00 A.M. - 4:00 P.M.).

2. Your response must state the deadline for filing responses, the date of the scheduled hearing and the motion to which you are responding.

[1] The last four digits of the Debtor's federal tax identification number are 3377. The corporate headquarters and the mailing address for the Debtor is 3815 Logistics Way, Antioch, Tennessee 37013.

If a response is filed before the deadline stated above, the hearing will be held at the time and place indicated above. **THERE WILL BE NO FURTHER NOTICE OF THE HEARING DATE.** You may check whether a timely response has been filed by viewing the case on the court's website at <https://ecf.tnmb.uscourts.gov>.

If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter the attached order granting that relief.

**APPLICATION OF DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF A&G REALTY PARTNERS, LLC AS REAL ESTATE CONSULTANT AND ADVISOR EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtor and debtor in possession (the "Debtor") hereby submits this application (this "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 327(a) and 328 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Middle District of Tennessee (the "Local Rules"), (i) authorizing it to employ and retain A&G Realty Partners, LLC ("A&G") as the Debtor's real estate consultant and advisor in accordance with the terms and conditions set forth in that certain real estate services agreement, dated February 10, 2025 (collectively, the "RESA"), a copy of which is attached as **Exhibit 1** to the Proposed Order, (ii) approving the terms of A&G's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in the RESA, (iii) waiving certain informational requirements, and (iv) granting such other and further relief as is just and proper. In support of this Application, the Debtor submits the *Declaration of Andrew Graiser in Support of the Application of Debtor for Entry of Order Authorizing Retention and Employment of A&G Realty Partners, LLC as Real Estate Consultant*

*Effective as of the Petition Date* (the "Graiser Declaration"), which is attached hereto as **Exhibit B** and incorporated herein and further respectfully states as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Middle District of Tennessee (the "Court") has jurisdiction over this chapter 11 case and this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue of this chapter 11 case and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested in this Application are sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## BACKGROUND

4. On February 3, 2025 (the "Petition Date"), the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtor is authorized to operate its business and manage its property as the debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An Official Unsecured Creditors Committee was appointed on February 11, 2025.

6. Additional factual background regarding the Debtor, including its business operations, capital structure, and the events leading to the filing of this chapter 11 case, is set forth in detail in the *Declaration of Rob Hubbard in Support of the Chapter 11 Petition and First Day Pleading*, Docket No. 22 (the "First Day Declaration"),[2] which is incorporated herein by reference.

[2] Capitalized terms used but not otherwise defined in this Application shall have the meaning ascribed to them in the First Day Declaration.

## A&G'S QUALIFICATIONS

7. The Debtor seeks to retain A&G as its real estate consultant because of, among other things, A&G's experience and knowledge of the retail real estate market, business reputation, and experience in providing services regarding the review, analysis, negotiation, and disposition of lease and real property agreements, both in and out of chapter 11 cases.

8. The principals of A&G have over fifty (50) years combined of commercial real estate experience and have extensive knowledge and expertise in the retail industry. A&G is a well-known, reputable, and diversified real estate consulting and advisory firm with offices located in New York and Illinois. A&G's professionals have extensive experience in providing services regarding the review, analysis, restructuring, disposition, and negotiation of key real property and lease agreements, inside and outside of bankruptcy. Recent cases A&G has been retained to provide real estate consulting services in, among other, include: In re Big Lots, Inc., Case No. 24-11967 (Bankr. D. Del. Oct. 18, 2024); In re Sam Ash Music Corporation, Case No. 24-14727 (Bankr. D. N.J. June 10, 2024); In re Bed Bath & Beyond Inc., Case No. 23-13359 (Bankr. D. N.J. June 1, 2023); In re Toms King (Ohio) LLC, Case No. 23-50001 (Bankr. N.D. Ohio Feb. 14. 2023); In re Cineworld Group plc., Case No. 22-90168 (Bankr. S.D. Tex. Oct. 28, 2022); In re Corsicana Bedding, LLC, Case No. 22-90016 (Bankr. N.D. Texas Aug. 9, 2022); In re PSI Liquidation, Inc. (f/k/a Paper Source, Inc.), Case No. 21-30660 (Bankr. E.D. Va. Mar. 30, 2021); In re FHC Holdings Corporation (f/k/a Francesca's Holdings Corporation), Case No. 20-13076 (Bankr. D. Del. Jan. 4, 2021); In re Tuesday Morning Corporation, Case No. 20-31476 (Bankr. N.D. Tex. July 9, 2020); and In re Charlotte Russe Holding, Inc, Case No. 19-10210 (Bankr. D. Del. Mar, 5, 2019).

9. The Debtor initially retained A&G on November 25, 2024 pursuant to a real estate services agreement. Since its retention and up to the Petition Date, A&G provided prepetition

services to the Debtor in preparation for the Debtor's restructuring efforts, including reviewing, analyzing, and negotiating the Debtor's key real property and lease agreements.

10. As a result of this work, A&G has acquired extensive knowledge of the Debtor and its business, the Debtor's leases and related matters. Accordingly, A&G has developed relevant experience and expertise regarding the Debtor that (i) makes A&G a natural selection as the Debtor's real estate consultant and (ii) will assist A&G in providing effective and efficient services in this chapter 11 case.

## SERVICES TO BE PROVIDED BY A&G

11. The parties have entered into the RESA, which governs the relationship between the Debtor and A&G. The terms and conditions of the RESA were negotiated at arm's-length and in good faith between the Debtor and A&G and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the RESA, in consideration for the compensation contemplated thereby, A&G has provided and has agreed to provide the following services (the "Services"):[3]

(a) marketing the Debtor's leases in a manner and form as determined by A&G and approved by the Debtor,

(b) negotiating with landlords and other third parties on behalf of the Debtor to assist the Debtor in obtaining Lease Sales,[4]

(c) providing regular update reports to the Debtor regarding the status of the services, and

[3] The summaries provided in this Application are provided for convenience only. In the event of any inconsistency between any summary and the terms and provisions of the RESA, the terms of the RESA shall control. Capitalized terms used but not otherwise defined in the summaries of the RESA contained herein shall have the meanings ascribed to such terms in the RESA. In the event of any inconsistency between any summary and the terms and provisions of the Proposed Order, the terms of the Proposed Order shall control.

[4] "Lease Sales", as further defined in the RESA, is defined as the sale or assignment, whether all or part, of a Lease and includes the sale of designation rights.

(d) providing additional services as requested by the Debtor that are not otherwise provided for in the RESA.

12. The Debtor believes that A&G's services will not duplicate the services that other professionals will be providing to the Debtor in this chapter 11 case. A&G will use reasonable efforts to coordinate with the Debtor's other retained professionals to avoid unnecessary duplication of services.[5]

## A&G'S COMPENSATION

13. In consideration of the services to be provided by A&G, and as more fully described in the RESA, subject to the Court's approval, the Debtor has agreed to pay A&G the following proposed compensation, which is set forth in the RESA (the "Fee and Expense Structure"):

(i) *Lease Sales*: For each Lease Sale obtained by A&G on behalf of the Debtor, A&G shall earn and be paid a fee in the amount of seven percent (7%) of the gross proceeds (the "Lease Sale Fee"), provided that A&G shall not be entitled to a Lease Sale Fee in the event the Debtor closes on a sale of all or substantially all its assets on a going concern basis, including a credit bid from any of the Debtor's secured creditors.

(ii) *Minimum Fee(s)*: If a lease is listed for sale and a closing on such Lease Sale does not occur, A&G shall earn and be paid a fee of five hundred dollars ($500) for such lease, including any leases assigned as a part of a going concern sale ("Minimum Fees"); provided, however, that the total amount of Minimum Fees to be paid to A&G shall be reduced dollar for dollar by the amount of compensation A&G earns for Lease Sales.

The Debtor shall pay each Lease Sale Fee to A&G upon the closing of the applicable Lease Sale, except as may be approved or directed otherwise in this chapter 11 case. In the event A&G is entitled to any Minimum Fee, the Debtor shall pay any invoices to A&G within five (5) days of receipt of an invoice therefor, except as may be approved or directed otherwise in this chapter 11 case.

(iii) *Expenses:* Reimbursement of all reasonable out-of-pocket incurred in connection with A&G's retention and provision of Services. The Debtor shall reimburse A&G for its expenses within five (5) business days upon receipt of invoice therefor, except as may be approved or directed otherwise in this chapter 11 case.

[5] The RESA shall be for a term of two (2) months following the agreement date, February 10, 2025 (the "Term"). In the event the services are not completed at the end of the Term, the RESA may be extended or renewed by written agreement of the Parties.

**The Fee and Expense Structure is Appropriate and Reasonable**
**<u>and Should be Approved under Section 328(a) of the Bankruptcy Code</u>**

14. The Debtor believes that the Fee and Expense Structure is comparable to those generally charged by real estate consultants of similar stature to A&G for comparable engagements and reflects a balance between a fixed fee and a contingency amount tied to the consummation and closing of the transactions and services contemplated by the Debtor and A&G in the RESA.

15. The Fee and Expense Structure is consistent with A&G's normal and customary billing practices for comparably sized and complex cases and transactions involving the services to be provided in connection with this chapter 11 case. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by A&G and other real estate consultants in connection with the rendering of comparable services to clients such as the Debtor.

16. A&G's real estate expertise, as well as its significant experience in the disposition and renegotiation of leases and properties in bankruptcy, were important factors in determining the Fee and Expense Structure. The ultimate benefit to the Debtor derived from the services provided by A&G pursuant to the RESA cannot be measured by a reference to the number of hours expended by A&G's professionals.

17. The Debtor and A&G negotiated the Fee and Expense Structure to function as an interrelated, integrated unit corresponding to A&G's overall services. It would be contrary to the intention of A&G and the Debtor for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of A&G's services. Instead, the Debtor and A&G intend for A&G's services be considered as a whole for which A&G is to be compensated by the Fee and Expense Structure in its entirety.

18. In light of the foregoing and given the numerous issues that A&G may be required to address in the performance of its services pursuant to the RESA, A&G's commitment to the

variable level of time and effort necessary to address all such issues as they arise, and the market prices for A&G's services for both in court and out of court engagements of this nature, the Debtor believes that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

## RECORD KEEPING AND APPLICATIONS FOR COMPENSATION

19. It is not the general practice of real estate consulting firms, including A&G, to keep detailed time records similar to those customarily kept by attorneys. Since A&G does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for professional services, the Debtor requests that A&G be excused from compliance with such requirements.

20. A&G will maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

21. A&G's applications for compensation and expense reimbursement will be paid by the Debtor pursuant to the terms of the RESA and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures established by the Court.

## A&G'S DISINTERESTEDNESS

22. To the best of the Debtor's knowledge and belief and except to the extent disclosed herein and in the Graiser Declaration, A&G: (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; and (ii) does not hold or represent any interest materially adverse to the Debtor or its estate.[6]

[6] As set forth in the Graiser Declaration, A&G has agreed to waive its pre-petition claim in the amount of $73,498.18, subject to getting retained.

23. Except as may be set forth in the Graiser Declaration, A&G has no connections with creditors and other parties in interest in this chapter 11 case. The Debtor and A&G do not believe that any of these connections constitute an interest materially adverse to the interest of the estate or of any class of creditors or equity holders in this chapter 11 case.[7]

24. To the extent A&G discovers any material facts bearing on the matters described herein during the period of A&G's retention, A&G has undertaken to amend and supplement the information contained in this Application and the Graiser Declaration to disclose such facts.

25. As set forth in the Graiser Declaration, A&G has not shared or agreed to share any of its compensation from the Debtor with any other person, other than as permitted by section 504 of the Bankruptcy Code. If any such agreement is entered into, A&G will undertake to amend and supplement the information contained in this Application and the Graiser Declaration to disclose the terms of any such agreement.

26. No promises have been received by A&G, or by any professionals engaged hereunder, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

## INDEMNIFICATION PROVISIONS

27. Among other things, the RESA provides that the Debtor shall indemnify A&G and its affiliates, and their respective past, present and future directors, officers, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (each, an "A&G Party" and cumulatively, the "A&G Parties") against any and all losses, claims, damages, or liabilities to which the A&G Parties may become subject in connection with the RESA, except

[7] For the avoidance of doubt, the Debtor agrees that A&G may be retained to provide real estate consulting and advisory services to any going concern buyer of the Debtor, provided such services are not adverse to the Debtor.

to the extent such losses are finally judicially determined to have resulted primarily from such A&G Party's gross negligence or willful misconduct.

28. The Debtor and A&G believe that the indemnification, contribution, reimbursement, and other related provisions contained in the RESA are customary and reasonable for real estate consulting and advisory engagements, both in and out of court, and, as modified by the Proposed Order, reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

29. The terms and conditions of the RESA, including these provisions, were negotiated by the Debtor and A&G at arm's length and in good faith. The Debtor respectfully submits that such provisions, viewed in conjunction with the other terms of A&G's proposed retention, are reasonable and in the best interests of the Debtor, its estate and creditors in light of the fact that the Debtor require A&G's services in this chapter 11 case.

**BASIS FOR RELIEF**

30. The Debtor seeks authority to employ and retain A&G as its real estate consultant under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out the [Debtors'] duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

31. In addition, the Debtor seeks approval of the RESA (including the Fee and Expense Structure and the indemnification provisions therein) pursuant to section 328(a) of the Bankruptcy

Code, which provides, in relevant part, that the Debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including real estate consultants, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862 (citations omitted), *cited in* Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC), 383 B.R. 869, 874 (S.D.N.Y. 2008).

32. The RESA appropriately reflects (i) the nature and scope of services to be provided by A&G, (ii) A&G's substantial experience with respect to real estate consulting and advisory services, and (iii) the Fee and Expense Structures typically utilized by A&G and other leading real estate consultants.

33. Similar fixed and contingency fee arrangements have been approved and implemented by this Court in other large chapter 11 cases. See, e.g., In re Nashville Senior Care, LLC, Case No. 23-02924 (Bankr. M.D. Tenn. Sept. 20, 2023); In re Gissing North America LLC,

Case No. 22-46160 (Bankr. E.D. Mich. Aug. 15, 2022); In re ASAIG, Case No. 20-35600 (Bankr. S.D. Texas Jun. 1, 2021); In re Henry Ford Village, Inc., Case No. 20-51066 (Bankr. E.D. Mich. Dec. 11, 2020); In re Murray Energy Holdings Co., Case No. 19-56885 (Bankr. S.D. Ohio Dec. 11, 2019); In re AcuSport Corporation, Case No. 18-52736 (Bankr. S.D. Ohio Jun. 4, 2018); In re First Energy Solutions Corp., Case No. 18-50757 (AMK) (Bankr. N.D. Ohio May 8, 2018); In re Family Christian, LLC, Case No. 15-00643 (Bankr. W.D. Mich. Mar. 20, 2015). Accordingly, the Debtor believes that A&G's retention on the terms and conditions proposed herein is appropriate.

## NOTICE

34. Notice of this Application will be provided to (a) the Office of the United States Trustee; (b) the Prepetition Agent; (c) the Prepetition Junior Secured Party; (d) the Internal Revenue Service; (e) the parties included on the Debtor's consolidated list of its 20 largest unsecured creditors; (f) the United States Attorney for the Middle District of Tennessee; (g) the state attorneys general in states where the Debtor is authorized to do business; (h) all other potentially secured parties; and (i) all parties that have requested notice pursuant to Bankruptcy Rule 2002. The Debtor respectfully submits that, in light of the nature of the relief requested, no further notice of this Application is required.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter the Proposed Order (a) granting the relief sought herein and (b) granting such other and further relief as the Court may deem proper.

Dated: February, 13 2025

/s/ *Rob Hubbard*
Rob Hubbard, Chief Restructuring Officer of the Debtor

**SUBMITTED FOR ENTRY:**


*/s/ David W. Houston, IV*
David W. Houston IV (BPR# 20802)
Charles E. Nugent (BPR# 042604)
**BURR & FORMAN LLP**
222 Second Avenue South, Suite 2000
Nashville, Tennessee 37201
Telephone: (615) 724-3200
Email: dhouston@burr.com; cnugent@burr.com

- and -

**MCDONALD HOPKINS LLC**
Sean D. Malloy (*pro hac vice*)
Michael J. Kaczka (*pro hac vice*)
600 Superior Avenue, E., Suite 2100
Cleveland, Ohio 44114
Telephone: (216) 348-5400
Email: smalloy@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com

*Proposed Counsel to the Debtor and Debtor in Possession*


## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2025 a copy of the foregoing document was filed electronically to be served via the Court's CM/ECF system on all parties.

*/s/ David W. Houston, IV*